**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**THEODORE COOPERSTEIN**  PLAINTIFF

v.  CIVIL ACTION NO.: 3:21-cv-00780-CWR-FKB

**SCOTTSDALE INSURANCE COMPANY, and
FEDERAL EMPLOYEE DEFENSE SERVICES, INC.**  DEFENDANTS

---

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, AND BAD FAITH**

---

Plaintiff Theodore Cooperstein files this Complaint for Declaratory Judgment, Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, and Bad Faith against Defendants Scottsdale Insurance Company ("Scottsdale") and Federal Employee Defense Services, Inc. ("FEDS") as follows:

### I.   NATURE OF ACTION

1.   This action arises from Defendants' bad faith denial of Plaintiff Theodore Cooperstein's claims for defense under his professional liability insurance policy. Mr. Cooperstein is an Assistant United States Attorney in the Southern District of Mississippi who faces allegations that he gave conflicting responses to questions about his COVID-19 vaccination status during various appearances while prosecuting cases on behalf of the United States Government before United States District Judge Carlton W. Reeves.

2.   Judge Reeves has issued show cause orders directing Mr. Cooperstein to explain his inconsistent responses, and the United States Department of Justice's Office of Professional Responsibility ("OPR") has opened an investigation into Mr. Cooperstein for possible misconduct relating to his alleged inconsistent responses.

1

3. Mr. Cooperstein is insured under a professional liability policy issued by Scottsdale and administered by FEDS, master policy no. FGS0000044 (the "Policy"), which provides coverage to Mr. Cooperstein through a certificate of insurance, certificate no. FGS-FE-2024235, naming Mr. Cooperstein an insured. The Policy includes a section agreeing to defend Mr. Cooperstein against judicial sanctions or disciplinary proceedings arising from any alleged misconduct by him in the course and scope of his employment "while engaged in and furthering the affairs or services" of the Government.

4. Mr. Cooperstein submitted claims under the Policy for defense of the show cause orders and OPR investigation. But Scottsdale, through FEDS, denied the claims, asserting that the show cause orders and OPR investigation did not arise from Mr. Cooperstein's acts while "furthering the affairs or services of his employer." According to FEDS, "Mr. Cooperstein was not engaged in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court."

5. Scottsdale and FEDS wrongly construe the Policy to provide coverage only when the alleged misconduct *itself* is specifically made to further the employer's affairs. The Policy, however, more broadly covers alleged misconduct occurring while the insured is "*engaged in and furthering the affairs or services*" *of the Government*.

6. The question, therefore, is not whether Mr. Cooperstein's specific alleged misrepresentations were made to further the Government's affairs or services, but whether his alleged misrepresentations were made while he was providing services in furtherance of the Government's affairs or services. Mr. Cooperstein was no doubt engaged in furthering the Government's affairs or services when he made each alleged misrepresentation since they were made while Mr. Cooperstein was acting in his professional capacity in open court, on the record,

and in the course and scope of his employment as an Assistant United States Attorney representing the United States Government.

7. Mr. Cooperstein now seeks: (1) a judgment declaring that the Policy provides coverage for his defense, and (2) money damages—including extra-contractual damages, attorneys' fees and expenses, and punitive damages—for Defendants' breach of contract, breach of the duty of good faith and fair dealing, and bad faith.

## II.   THE PARTIES

8. Plaintiff Theodore Cooperstein is an Assistant United States Attorney in the Southern District of Mississippi, who resides in Ridgeland, Mississippi.

9. Defendant Scottsdale is a foreign corporation engaged in the business of underwriting insurance products. Scottsdale is incorporated in the State of Ohio and has its principal place of business at 8877 North Gainey Center Drive, Scottsdale, Arizona 85258.

10. Defendant FEDS is a dissolved foreign corporation that sells insurance products and administers insurance claims. FEDS conducts business at 4829 West Lane, Bethesda, MD 20814.

## III.   JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) as the matter in controversy involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12. This Court has jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration" under 28 U.S.C. §§ 2201 and 2202. An actual and ripe controversy has arisen between the parties regarding coverage owed under the Policy.

13. A substantial part of the events, acts, and omissions giving rise to this controversy occurred in this judicial district. Thus, this Court is the proper venue under 28 U.S.C. § 1391.

14. This Court has personal jurisdiction over Defendants under Mississippi's long arm statute, Miss. Code Ann. § 13-3-57, because Defendants were doing business in Mississippi. Specifically, Defendants entered into a contract of insurance with Mr. Cooperstein (a Mississippi resident) to be performed in whole or part in Mississippi. Defendants sold the insurance policy to Mr. Cooperstein in Mississippi, delivered his certificate of insurance to him in Mississippi, and insured a risk located in Mississippi. All premiums were billed to and paid by Mr. Cooperstein in Mississippi. Defendants also committed the tort of bad faith in whole or part in Mississippi. When the insured risk materialized in Mississippi and Mr. Cooperstein submitted claims for coverage to defend against a judicial sanctions and disciplinary matters in Mississippi, Defendants denied the claims in bad faith, causing Mr. Cooperstein to incur damages in Mississippi. Defendants thus have sufficient contacts with Mississippi such that they could reasonably anticipate having to defend this action here, and the Court's exercise of personal jurisdiction comports with the due process standards of the 14th Amendment of the United States Constitution.

### IV.     FACTUAL ALLEGATIONS

**The Allegations Giving Rise to Mr. Cooperstein's Insurance Claim:**

15. On June 22, 2021, in *United States of America v. Miranda-Alcantar*, No. 3:20-CR-151 (S.D. Miss), Mr. Cooperstein appeared in court as counsel on behalf of the United States for a change of plea hearing. Once the court was in session and the case called on the docket, presiding Judge Carlton W. Reeves asked the parties and counsel on the record whether they were vaccinated against COVID-19. A transcript from the hearing indicates that Mr. Cooperstein nodded his head affirmatively.

16.     On June 29, 2021, in *United States of America v. Bell*, No. 3:19-CR-31 (S.D. Miss), Mr. Cooperstein appeared in court as counsel on behalf of the United States for a change of plea hearing. Once the court was in session and the case called on the docket, presiding Judge Carlton W. Reeves asked the parties and counsel on the record whether they were vaccinated against COVID-19. Mr. Cooperstein indicated he was.

17.     On July 8, 2021, in *United States of America v. Escobar-Castro*, No. 3:19-CR-97 (S.D. Miss), Mr. Cooperstein appeared in court as counsel on behalf of the United States for a sentencing hearing. After the court was in session and during case-specific discussions on the record, presiding Judge Carlton W. Reeves asked the parties and counsel whether they were vaccinated against COVID-19, and stated to Mr. Cooperstein: "All right. Mr. Cooperstein, and I know you've answered this question before but - " Mr. Cooperstein interjected with "Yes, sir," indicating that he had answered the question before.

18.     On October 6, 2021, in *United States of America v. Bell*, No. 3:19-CR-31 (S.D. Miss), Mr. Cooperstein again appeared in open court on behalf of the United States for a sentencing hearing. Once the court was in session and the case called on the docket, presiding Judge Carlton W. Reeves asked the parties and counsel on the record whether they were vaccinated against COVID-19. Mr. Cooperstein stated he was not vaccinated and noted he had applied for an exemption from his employer.

19.     On October 27, 2021, Judge Reeves issued three show cause orders (one in each of the above cases), noting that Mr. Cooperstein had given conflicting representations about his vaccine status. (Copies of the show cause orders are collectively attached as **Exhibit A**.) Judge Reeves ordered that Mr. Cooperstein show cause and explain why he should not be sanctioned for making one or more misrepresentations to the Court about his vaccine status. *Id*.

20. Relatedly, by letter dated November 5, 2021, the OPR advised then-Acting United States Attorney (Darren LaMarca) that it is investigating the alleged misrepresentations. OPR asked that Mr. Cooperstein be directed to provide written responses to its questions about Mr. Cooperstein's representations to the court. (A copy of OPR's November 5, 2021 letter is attached as **Exhibit B**.)

**The Policy:**

21. The Policy provides Mr. Cooperstein professional liability coverage, effective June 12, 2021 through June 12, 2022, in the amount of $200,000.00 for administrative legal defense coverage (among other coverages). (A copy of the Policy is attached as **Exhibit C**.)

22. Section II in the Policy covers payment of Mr. Cooperstein's defense costs for any disciplinary, judicial sanctions, and criminal proceedings:

> **SECTION II—ADMINISTRATIVE AND CRIMINAL LEGAL DEFENSE EXPENSE COVERAGE**
>
> **A.     Insuring Agreement and Claims Made Clause**
>
> Subject to the Limits of Liability listed on the Declarations, and as stated in **SECTION VII – LIMITS OF LIABILITY, C. Administrative and Criminal Legal Defense Expense Coverage,** the Company shall select counsel and pay the costs of defense arising out of any **DISCIPLINARY PROCEEDINGS, JUDICIAL SANCTIONS PROCEEDINGS, CRIMINAL PROCEEDINGS**, or any investigation into the **INSURED MEMBER'S** alleged misconduct, instituted against the **INSURED MEMBER** for any act, error or omission in **PROFESSIONAL SERVICES** rendered or which should have been rendered in the **INSURED MEMBER'S** professional capacity as a full or part-time Employee of the United States Federal Government or a military police officer in the United States armed services.[1]

---

[1] The Policy defines "Disciplinary Proceedings" at Section IV(F) as "any proceeding in the United States (Federal or State), including investigations, before any entity, or entities, established by the United States (Federal or State) constitutional provision, statute, regulation, or court rules, to investigate, review or impose sanctions for charges of professional misconduct." The Policy defines "Judicial Sanctions Proceeding" at Section IV(J) as "any proceeding initiated or held by

6

…

23. "Professional Services" is defined in the Policy at Section IV(R):

> **R.    PROFESSIONAL SERVICES**
>
> 1.    The services rendered within the course and scope of employment for the United States Federal Government designated on the **INSURED MEMBER'S** application on file with the Company and performed while engaged in and furthering the affairs or services of that United States Federal Government.

Ex. C, pp. 7-8, 13.

**Scottsdale Immediately (and Wrongly) Denies Mr. Cooperstein's Claims:**

24. On October 27, 2021, Mr. Cooperstein submitted a claim under the Policy for defense of the show cause orders.

25. The next day (October 28, 2021), FEDS representative Darrin Sherman, as claims administrator for Scottsdale, called Mr. Cooperstein to advise that Scottsdale would be denying the claim because, according to Mr. Sherman, the allegations were not covered by the Policy.

26. Mr. Cooperstein received FEDS' formal denial letter (dated October 28, 2021) on November 5, 2021. The letter advised that Scottsdale had rejected the claim because the alleged misconduct, according to Defendants, did not arise from "professional services rendered" as an employee:

> We respectfully inform you that there is no coverage afforded to you for this investigation under your Federal Employee Professional Liability policy because it does not arise from the insured member's act, error or omission in professional services rendered or which should have been rendered in the insured member's professional capacity as a full or part-time employee of the United States Federal Government. Specifically, the allegation that you misrepresented your COVID-19 vaccination status to the Court, does not constitute misconduct arising from an act, error or omission in professional services rendered.

---

any adjudicatory body as a result of any act, error or omission in rendering PROFESSIONAL SERVICES before or under the authority of said adjudicatory body."

(A copy of FEDS' October 28, 2021 letter is attached as **Exhibit D**.)

27. Although FEDS' denial letter quoted the Policy provisions on which it based the denial, the letter never quoted (or even paraphrased) the Policy's definition of "Professional Services" and failed to explain how Mr. Cooperstein's alleged misconduct supposedly fell outside that definition.

28. By the time he received FEDS' denial letter, Mr. Cooperstein had retained the law firm Wise Carter Child & Caraway ("Wise Carter") to defend him in the show cause proceedings and OPR investigation.

29. On November 9, 2021, Wise Carter attorney John Sneed wrote to FEDS on behalf of Mr. Cooperstein to request Scottsdale reconsider its wrongful denial. Mr. Sneed provided FEDS with his analysis of the Policy, which determined that Mr. Cooperstein's claims were plainly covered, and advised Scottsdale it had denied coverage with no arguable or reasonable basis. (A copy of Mr. Sneed's November 9, 2021 letter is attached as **Exhibit E**.)

30. Mr. Sneed's letter also advised that, since Mr. Cooperstein's original claim, the OPR had begun investigating Mr. Cooperstein for possible professional misconduct. Mr. Sneed, in addition to requesting that Scottsdale reconsider its wrongful denial of Mr. Cooperstein's claim for defense of the show cause proceedings, asked that Scottsdale provide coverage for defending the OPR investigation. Ex. E, p. 1.

31. By letter dated November 11, 2021, FEDS wrote Mr. Cooperstein to advise that Scottsdale was rejecting the claim for coverage to defend the OPR investigation. Defendants' denial, like their denial of coverage for the show cause proceedings, asserted that Mr. Cooperstein's alleged misconduct did not arise from "professional services rendered" as an employee:

> We respectfully inform you that there is no coverage afforded to you for this investigation under your Federal Employee Professional Liability policy because it does not arise from the insured member's act. error or omission in professional services rendered or which should have been rendered in the insured member's professional capacity as a full or part-time employee of the United States Federal Government. Specifically, the allegation that you misrepresented your COVID-19 vaccination status to the court, does not constitute misconduct arising from an act, error or omission in professional services rendered.

(A copy of FEDS' November 11, 2021 letter is attached as **Exhibit F**.)

32. Like Defendants' first denial letter, the second denial letter never quoted (or even paraphrased) the Policy's definition of "Professional Services" and failed to explain how Mr. Cooperstein's alleged misconduct supposedly fell outside that definition.

33. By letter dated November 12, 2021, FEDS then wrote to Mr. Sneed and advised that Scottdale would not reverse its decision to deny coverage for defending the show cause proceedings because, according to Defendants, "Mr. Cooperstein was not engaged in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court:"

> After careful consideration of your recent letter, it remains the position of Scottsdale Insurance Company that there is no coverage afforded to Mr. Cooperstein for this judicial sanction proceeding. Though Mr. Cooperstein was at the courthouse on behalf of his employer when Judge Reeves questioned him regarding his COVID-19 vaccinations status, his purported misconduct is about alleged misrepresentations he made regarding his personal medical status and not related to his handling of the underlying criminal proceeding(s). Mr. Cooperstein was not engaged in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court.

(A copy of FEDS' November 12, 2021 letter is attached as **Exhibit G**.)

34. The letter further advised that Scottsdale would not provide coverage for defending the OPR investigation because, again according to Defendants, "Mr. Cooperstein was not engaged

9

in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court:"

> Finally, I acknowledge your additional notice of claim and request for coverage and defense costs on behalf of Mr. Cooperstein related to the letter of inquiry he received from the Office of Professional Responsibility dated November 5, 2021. Following a careful review of this letter it is the position of Scottsdale Insurance Company that there is no coverage afforded to Mr. Cooperstein for this Office of Professional Responsibility inquiry. Mr. Cooperstein was not engaged in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court.

*Id*.

35. Scottsdale and FEDS have twisted the language of the Policy as purportedly requiring that the alleged misconduct *itself* be specifically made to further the Government's affairs. But that is not what the Policy requires to trigger coverage.

36. The Policy's Insuring Agreement in Section II(A) more broadly covers alleged misconduct occurring while the insured is "engaged in and furthering the affairs or services of" the Government. Specifically, Section II(A) covers "alleged misconduct…for any act, error or omission in PROFESSIONAL SERVICES rendered or which should have been rendered… ."

37. "Professional Services" is defined in Section IV(R) as "services rendered within the course and scope of employment for the United States Federal Government…and performed while engaged in and furthering the affairs or services of that United States Federal Government." Applying the definition of "Professional Services" to the Insuring Agreement shows that the Policy covers defense costs for "alleged misconduct…for any act, error or omission in PROFESSIONAL SERVICES [services rendered within the course and scope of employment for the Government and performed while engaged in and furthering the affairs or services of that Government]."

10

38.     Thus, the question is not whether Mr. Cooperstein's alleged misconduct *itself* was made in furthering Government affairs or services, but whether the alleged misconduct was committed "*while [Mr. Cooperstein] was engaged in and furthering* the affairs or services of the Government." Accordingly, if misconduct allegedly occurs while Mr. Cooperstein is engaged in and furthering the Government's affairs or services, coverage is triggered.

39.     Here, Mr. Cooperstein was engaged in and furthering the affairs or services of the Government when he made the alleged misstatements because he was appearing in court as an Assistant United States Attorney litigating a case on behalf of the United States Government, in open court and on the record.

40.     Scottsdale's and FEDS' contrived interpretation of Section II leads to illusory coverage. Scottsdale has denied coverage because Mr. Cooperstein's alleged misconduct was supposedly not in furtherance of the Government's affairs or services, but misconduct itself can never be in furtherance of the Government's affairs or services since, by its nature, misconduct is antithetical to, and could never legitimately further, the Government's affairs or services. Thus, if Scottsdale's interpretation were correct, the Policy could never provide coverage.

## COUNT I
## DECLARATORY JUDGMENT (Against Scottsdale)

41.     Mr. Cooperstein repeats and re-alleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.     An actual controversy exists between the parties concerning the application of the Policy to the claims submitted. Accordingly, the parties have a direct, substantial, and present interest in having Section II of the Policy construed and applied to Mr. Cooperstein's submitted claim.

43. Under the terms, conditions and provisions of the Policy, Mr. Cooperstein is entitled to a declaration that:

    a. the allegations of misconduct in the show cause orders and OPR letter dated November 5, 2021 trigger coverage under Section II of the Policy; and

    b. Scottsdale is obligated under the Policy to pay for Mr. Cooperstein's defense in the show cause proceedings and OPR investigation.

WHEREFORE, Mr. Cooperstein prays the Court enter a judgment declaring that Scottsdale owes Mr. Cooperstein a defense in the show cause proceedings and OPR investigation, and such further relief as the Court may deem just and proper. Further, Mr. Cooperstein requests a trial by jury on all issues so triable.

## COUNT II
## BREACH OF CONTRACT (Against Scottsdale)

44. Mr. Cooperstein repeats and re-alleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

45. Scottsdale owed Mr. Cooperstein a contractual duty under the Policy to hire defense counsel and promptly pay for Mr. Cooperstein's attorneys' fees and expenses associated with defending the show cause orders and OPR investigation.

46. Scottsdale breached these duties and obligations by wrongfully denying Mr. Cooperstein's insurance claim.

47. Scottsdale's failure to promptly hire defense counsel to represent Mr. Cooperstein is a breach of the insurance policy.

48. Mr. Cooperstein has suffered actual damages because of Scottsdale's breaches and continues to suffer damages.

49. Mr. Cooperstein has also suffered consequential damages because of Scottsdale's breaches.

WHEREFORE, Mr. Cooperstein prays the Court enter an award of actual, compensatory, and consequential damages, attorneys' fees and expenses, interest, the costs of this action, and such other and further relief as the Court may deem just and proper. Further, Mr. Cooperstein requests a trial by jury on all issues so triable.

## COUNT III
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (Against Both Defendants)

50. Mr. Cooperstein repeats and re-alleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

51. Mississippi law imposes on the parties an implied duty of good faith and fair dealing in the performance and enforcement of the Policy.

52. Scottsdale and FEDS breached their duty of good faith and fair dealing by unjustifiably denying Mr. Cooperstein's claims without a reasonable or arguable basis after a cursory review of the claims.

53. Mr. Cooperstein has suffered actual and consequential damages because of Defendants' breaches, and continues to suffer damages.

WHEREFORE, Mr. Cooperstein prays the Court enter an award of actual, compensatory and consequential damages, attorneys' fees and expenses, interest, the costs of this action, and such other and further relief as the Court may deem just and proper. Further, Mr. Cooperstein requests a trial by jury on all issues so triable.

## COUNT IV
## BAD FAITH (Against Both Defendants)

54. Mr. Cooperstein repeats and re-alleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

55. Mississippi law requires that an insurance carrier and its administrator treat their insureds with honesty, fairness, with due regard for the insured's interests, and act toward the insured with utmost good faith and fair dealing. Scottsdale and FEDS breached these duties in the handling of Mr. Cooperstein's claims to ensure their own financial gain and profit.

56. Scottsdale and FEDS have failed or refused in good faith to accept the claims when they could and should have had they acted fairly and honestly towards Mr. Cooperstein.

57. Scottsdale and FEDS conducted a cursory, outcome-oriented review of the claims, denying them with no reasonable or arguable basis.

58. Rather than carrying out their contractual and ethical duties, Scottsdale and FEDS have not acted in good faith. Their actions lack an arguable legal or factual basis and constitute intentional and willful misconduct, or gross negligence or reckless disregard for Mr. Cooperstein's rights. Defendants' bad faith includes, but is not limited to, denying the original claim within twenty-four hours and the second claim within forty-eight hours without a reasonable or arguable basis; providing a manufactured, bogus alleged basis for denying the claims; and construing the Policy in an unreasonable manner such that the Policy, Section II, provides illusory coverage.

59. Because of these acts, omissions, and violations of the law, Mr. Cooperstein has had to hire the Wise Carter law firm to defend him in the show cause proceedings and OPR investigation, and has also had to hire the undersigned attorneys to represent him in this action. Mr. Cooperstein has incurred, and will continue to incur, attorneys' fees and expenses that, but for Defendants' bad faith, he would not have to pay. Defendants' bad faith is made that more

outrageous given the pressing deadlines set by Judge Reeves in his show cause orders and by OPR in its request for information. Defendants' bad faith required Mr. Cooperstein to scramble to find counsel who were forced to work at breakneck pace to adequately defend Mr. Cooperstein.

60.     Mr. Cooperstein is entitled to recover his attorneys' fees, expenses, and punitive damages because of Defendants' improper, malicious conduct, and to punish and deter Defendants from engaging in this practice in the future.

WHEREFORE, Mr. Cooperstein prays the Court enter judgment against Scottsdale and FEDS for actual and compensatory damages, interest, costs, attorneys' fees and expenses, extra-contractual damages and punitive damages, and such other and further relief as the Court finds just and appropriate. Mr. Cooperstein further requests a trial by jury on all issues so triable.

Respectfully submitted: December 8, 2021.

**THEODORE COOPERSTEIN**

By:     *s/ Jason M. Kirschberg*
        Jason M. Kirschberg (MBN 104860)
        Jeffrey P. Reynolds (MBN 5305)
        JEFFREY P. REYNOLDS, P.A.
        P.O. Box 24597
        Jackson, Mississippi 39225
        Tel: (601) 355-7773
        Fax: (601) 355-6364
        jason@jprpa.com
        jeff@jprpa.com