# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

THEODORE COOPERSTEIN                                                PLAINTIFF

VS.                                     CIVIL ACTION NO. 3:21-CV-00780-GHD-DAS

SCOTTSDALE INSURANCE COMPANY and
FEDERAL EMPLOYEE DEFENSE SERVICES, INC.                DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is the Plaintiff's motion for partial summary judgment as to Count One of the Complaint [21] and the Defendants' motion for partial summary judgment as to the Plaintiff's claims [19]. Upon due consideration and as described herein, the Court finds that the Plaintiff's motion should be granted and the Defendants' motion should be denied.

### I. *Factual and Procedural Background*

The Plaintiff is a former Assistant United States Attorney in the Southern District of Mississippi. During his employment, he was insured under a federal employee professional liability policy, numbered FGS0000044, issued by the Defendant Scottsdale Insurance Company ("Scottsdale") [Doc. 21-8]. The policy was administered by the Defendant CRC Insurance Services, Inc. d/b/a Federal Employee Defense Services ("FEDS"). This type of insurance policy, available to certain federal employees, covers costs to defend against judicial sanctions or disciplinary proceedings arising from alleged misconduct while engaged in and furthering the affairs or services of the federal government.

On four separate occasions between June 22, 2021, and October 6, 2021, during the COVID-19 pandemic, the Plaintiff appeared in federal court as counsel for the government before United States District Court Judge Carlton W. Reeves in the Southern District of Mississippi

[Transcripts, Docs. 21-2, 3, 4, 5]. On each occasion, at the beginning of the proceedings, Judge Reeves asked the parties and counsel on the record whether they were vaccinated against COVID-19 [Id.]. The Plaintiff gave conflicting responses each time – nodding his head affirmatively on June 22, 2021; stating he was vaccinated on June 29, 2021; responding "Yes, sir" on July 8, 2021; and finally, on October 6, 2021, responding that he was not vaccinated but had instead applied for an exemption from the vaccination requirement. [Id.]. On October 27, 2021, Judge Reeves issued show cause orders in each of the subject cases in which the Plaintiff had appeared as counsel, directing the Plaintiff to explain his inconsistent responses and to show cause why he should not be sanctioned for making one or more misrepresentations to the court [21-6]. In addition, on November 5, 2021, the United States Department of Justice's Office of Professional Responsibility ("OPR") opened an investigation into the Plaintiff's conduct regarding his conflicting responses to the court and directed the Plaintiff to respond to OPR's questions regarding the Plaintiff's alleged conduct [21-7]. Judge Reeves ultimately sanctioned the Plaintiff in the amount of $6,000.00 on July 7, 2022, and the Plaintiff retired from federal service later that year [21-1].

The Plaintiff submitted a claim [21-9] under the subject federal employee professional liability policy on October 27, 2021, the same date that Judge Reeves issued the subject show cause orders. The very next day, October 28, the Defendants issued a formal denial letter, rejecting the Plaintiff's claim [21-10, 11]; the Defendants subsequently issued a similar denial letter rejecting the Plaintiff's claim regarding the OPR investigation [21-13]. The stated grounds for denial in both letters were identical - that the Plaintiff's alleged misrepresentations to the court did not qualify under the policy as "misconduct arising from an act, error or omission in professional services rendered," and thus his incurred costs of defense regarding the show cause orders and the OPR investigation were not covered under the policy [21-11, 13]. The Defendants subsequently

2

reiterated the grounds for denial, stating in a November 12, 2021, letter that because the Plaintiff "was not engaged in furthering the affairs or services of his employer when he allegedly misrepresented his personal medical status to the court," the Policy would not cover the Plaintiff's defense costs and his claim would be denied [21-14].

The Plaintiff then filed this action in the Southern District of Mississippi on December 8, 2021, seeking (1) a declaratory judgment holding that the Policy covers the costs of defense with regard to the show cause proceedings and the OPR investigation, and asserting claims for (2) breach of contract; (3) breach of the duty of good faith and fair dealing; and (4) bad faith. [1]. The Plaintiff has now filed a pending motion for partial summary judgment as to Count One of the Complaint (declaratory judgment), and the Defendants have filed a pending motion for partial summary judgment as to Counts One and Two of the Complaint (declaratory judgment and breach of contract).

## *II.    Summary Judgment Standard*

The Court grants summary judgment as to one of more claims "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law" as to the subject claim(s). FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate

the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis and Discussion[1]

In the case *sub judice*, subject to a policy limit of $200,000.00, the subject Policy states in relevant part:

> The Company shall select counsel and pay the costs of defense arising out of any DISCIPLINARY PROCEEDINGS, JUDICIAL SANCTIONS PROCEEDINGS, CRIMINAL PROCEEDINGS, or any investigation into the INSURED MEMBER'S alleged misconduct, instituted against the INSURED MEMBER for any act, error or omission in PROFESSIONAL SERVICES rendered or which should have been rendered in the INSURED MEMBER'S professional capacity as a full or part-time Employee of the United States Federal Government ...

[21-8].

---

[1] The Court notes that in this diversity action, the *Erie* doctrine applies and thus the substantive law used to determine whether either of the parties' motions are meritorious is guided by Mississippi state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

"Under Mississippi law, an insurance policy is a contract subject to the general rules of contract interpretation." *Essex Ins. Co. v. Greenville Convalescent Home Inc.*, 236 F. App'x 49, 51 (5th Cir. 2007) (per curiam) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So.2d 779, 781 (Miss. 1998)). Under Mississippi law, an insurer has an absolute duty to defend a lawsuit filed against its insured in circumstances covered by the policy. *Titan Indent. Co. v. City of Brandon*, 27 F.Supp.3d 693, 697 (S.D. Miss. 1997) (citing *State Farm Mut. Auto. Ins. Co. v. Taylor*, 233 So.2d 805, 808 (Miss. 1970); *So. Farm Bureau Cas. Ins. Co. v. Logan*, 119 So.2d 268, 270–71 (Miss. 1960)). The determination of whether a liability carrier has a duty to defend depends on the policy language and the allegations of the applicable complaint. *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (citing *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So.2d 196, 200 (Miss. 2002)). Under this "eight-corners" test, the allegations in the complaint are analyzed against the language in the policy to determine coverage and the duty to defend. *Id.* If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises. *Id.*; see *Sennett v. U.S. Fid. & Guar. Co.*, 757 So.2d 206, 212 (Miss.2000) ("A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy.").

"Where an insurance policy is clear and unambiguous, the meaning and effect of the policy is a question of law." *Essex Ins. Co.*, 236 F. App'x at 51 (citing *Love by Smith v. McDonough*, 758 F. Supp. 397, 399 (S.D. Miss. 1991)). "[T]he policy itself is the sole manifestation of the parties' intent and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Cherry v. Anthony, Gibbs & Sage*, 501 So.2d 416, 419 (Miss. 1987). "Insurance contracts are construed strictly

5

against the insurer and in favor of the policyholder." *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So.2d 866, 871 (Miss. 1995) (internal citation omitted); *Titan Exteriors, Inc. v. Certain Underwriters at Lloyd's, London*, 297 F. Supp. 3d 628, 631 (N.D. Miss. 2018) (holding that "[u]nder Mississippi law, ambiguous and unclear policy language must be resolved in favor of the non-drafting party—the insured.") (citing *Noxubee Cty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So.2d 1159, 1165 (Miss. 2004). The Mississippi Supreme Court has likewise stated that when "the terms of an insurance policy are clear, plain and explicit, the court should not give a forced construction of the policy." *Titan Indem. Co. v. Estes*, 825 So. 2d 651, 658 (Miss. 2002).

In the case *sub judice*, in order to adjudicate the pending motions, the Court must determine whether the subject policy language covers the Plaintiff's alleged misconduct. More specifically, the Court must determine whether the Plaintiff's misrepresentations before the subject court were "performed while engaged in and furthering the affairs or services of the United States Federal Government." [21-8, at pp. 7-8, 13]. If the subject judicial show cause and OPR proceedings were initiated against the Plaintiff for misconduct in the course and scope of his employment and the Plaintiff's misrepresentations were made while he was engaged in and furthering the affairs or services of the Federal government, the Policy clearly covers the Plaintiff's defense costs.

The subject show cause and OPR proceedings were initiated against the Plaintiff for alleged misrepresentations regarding his COVID-19 vaccination status. The misrepresentations were made while the Plaintiff was in federal court to represent the United States and to prosecute cases on behalf of the United States. The misrepresentations were made on the record and were in response to questions posed by the presiding Judge.

The Defendants argue that because the misrepresentations were not themselves made in furtherance of the affairs or services of the United States, the Policy does not cover the Plaintiff's

defense costs. The Court finds, however, that the misrepresentations were clearly made while the Plaintiff was furthering the affairs or services of the United States because he was in court appearing for the United States, the cases the Plaintiff was prosecuting had been called by the court, and he was responding on the record to questions posed by the presiding Judge in each instance. This lines up with the relevant Policy language, which states that the Defendant insurer will pay the costs of defense arising out of any disciplinary proceeding or investigation into the Plaintiff's alleged misconduct regarding services rendered within the course and scope of employment and performed while engaged in and furthering the affairs or services of the United States. The Court finds that the Plaintiff's alleged misconduct clearly was committed while he was rendering services within the course and scope of his employment and while he was engaged in and furthering the affairs or services of the United States. Therefore, under the relevant policy language, which the Court finds is clear and unambiguous, the Defendant insurer is obligated to cover the Plaintiff's defense costs.

Finally, the Defendants argue that a Policy exclusion for Intentional Acts serves to render denial of the Plaintiff's claim appropriate. The Court finds, however, again under the plain unambiguous language of the Policy, that this exclusion does not apply. The subject exclusion, which covers "willful violation of penal statute or penal ordinance, fraud, and intentional misconduct," by its own terms applies solely to criminal or disciplinary proceedings, not to judicial sanctions proceedings [21-8]. The Plaintiff's claim, as noted above, falls under the Policy's Judicial Sanctions Proceedings coverage, which is covered in the subject Policy language as a separate category from criminal or disciplinary proceedings, as is made clear in the Policy language quoted by the Court *infra* on page 4. Because Judicial Sanctions Proceedings are absent from the Policy's subject Intentional Acts Exclusion, and because the proceedings for which the

Plaintiff seeks coverage from the Policy are Judicial Sanctions Proceedings, the Court finds that the Exclusion does not exclude coverage of the Plaintiff's claim.

In sum, given the clear and unambiguous subject Policy language, and given Mississippi law, which holds that "[i]nsurance contracts are construed strictly against the insurer and in favor of the policyholder," the Court finds that the Plaintiff's alleged misconduct is covered by the Policy and the Plaintiff's defense costs are therefore covered by the Policy. *Johnson,* 659 So.2d at 871. The Defendants' argument that the Plaintiff's claim is subject to a Policy Exclusion is without merit. Accordingly, the Plaintiff's motion for partial summary judgment shall be granted and the Defendants' motion for partial summary judgment shall be denied.

## *IV.    Conclusion*

In sum, for the foregoing reasons, the Plaintiff's motion for partial summary judgment shall be granted and the Defendants' motion for partial summary judgment shall be denied. Count One of the Plaintiff's Complaint for Declaratory Judgment shall be granted, and the Court declares that the Plaintiff, based upon the subject insurance policy – Federal Employee Professional Liability Policy No. FGS0000044, issued by Defendant Scottsdale Insurance Company and administered by CRC Insurance Services, Inc. d/b/a Federal Employee Defense Services, Inc. - is entitled to a defense in the show cause proceedings issued by U.S. District Judge Carlton Reeves and in the investigation performed by the Department of Justice's Office of Professional Responsibility, at the Defendant Scottsdale Insurance Company's expense, and Scottsdale Insurance Company shall reimburse, up to a maximum of the Policy's limits, the Plaintiff for all legal fees reasonably

incurred in those proceedings.

    An order in accordance with this opinion shall issue this day.

    THIS, the 6th day of March, 2023.

                                             _____
                                             SENIOR U.S. DISTRICT JUDGE